## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DeANDRE CRAWFORD,<br>M30080, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-02737-GCS |
| | ) | |
| ZION PIERCEFIELD, | ) | |
| MRS. FITZGERALD, | ) | |
| MR. KOHN, | ) | |
| MARGOT MADOLE, | ) | |
| MR. GARRETT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff DeAndre Crawford, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Lawrence Correctional Center ("Lawrence"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that the defendants violated his right to practice his religion, and they engaged in retaliation after he grieved the issue. He seeks monetary compensation.

The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 5) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff is a Muslim whose religious practice involves five daily prayers. (Doc. 1, p. 2-3). The last prayer of the day is Isha. Plaintiff was completing his Isha prayer while at his prison job on August 31, 2021. During the prayer, Defendant Piercefield asked other workers about Plaintiff's whereabouts and then called Plaintiff's name despite other inmates telling Piercefield he was praying. Piercefield asked Plaintiff to stop his prayer at least twice and told him that his prayer was "holding the line up." *Id.* at p. 3. Despite Piercefield's insistence, Plaintiff completed his prayer. Plaintiff later grieved Piercefield's interruption of his prayer, and the dietary response was that he was expected to work while on assignment.

Plaintiff alleges that after he grieved Piercefield's conduct, other staff began to retaliate against him. (Doc. 1, p. 3). On September 10, 2021, Plaintiff believed he had the day off from work, and he planned to use the day to rest because he had experienced chest pains the previous night. Piercefield, however, issued Plaintiff a ticket for his failure to report to work. Piercefield informed Plaintiff that even if he was sick, he would have to report to work to check-in before taking the day off. He also informed Plaintiff that his

days off had changed. Plaintiff alleges he was found guilty of this ticket. *Id.* at p. 3-4. On October 11, 2021, Piercefield wrote a second ticket for Plaintiff's failure to report to work, but it was later expunged. *Id.* at p. 4. Despite the ticket being expunged, Plaintiff alleges that Defendant Kohn, the dietary supervisor, used the ticket as a basis to fire him from his job. When the ticket was expunged, however, Plaintiff's job was not restored.

Plaintiff wrote to Defendant Kohn to seek assistance from Piercefield's alleged harassment. Kohn, however, refused to assist. Plaintiff alleges that Kohn made the work schedule, and he knew he did not inform Plaintiff of any schedule changes. (Doc. 1, p. 4).

Meanwhile, on September 20, 2021, Plaintiff alleges that Mrs. Fitzgerald issued Plaintiff a ticket in retaliation for the grievance he had filed against Piercefield. Plaintiff asked Mrs. Fitzgerald about the ticket, and she "said something about writing grievances." (Doc. 1, p. 4).

Plaintiff separately alleges that on July 31, 2021, he wrote a grievance that a non-party counselor received on August 13, 2021. He sent the grievance to the grievance office, and Defendant Garrett answered it on August 28, 2021. Plaintiff mailed it to the Administrative Review Board ("ARB") on October 9, 2021. Despite this timeline of events, he alleges that the ARB did not receive the grievance until November 4, 2021, and on November 15, 2021, Defendant Madole rejected the grievance as untimely. (Doc. 1, p. 5). Plaintiff alleges that the handling of this grievance violated his due process rights.

Plaintiff further alleges that he wrote a grievance about the retaliatory acts of Piercefield and Mrs. Fitzgerald on August 9, 2021,[2] but a counselor erroneously deemed it a duplicate of his July 2021 grievance. He alleges that Defendants Garrett and Madole compounded the errors with the August 9, 2021, grievance by failing to address it after it was deemed a duplicate. (Doc. 1, p. 5).

Plaintiff proceeds to identify enumerated counts against each Defendant. He alleges Defendants Piercefield and Kohn violated his rights under the First Amendment (religion and retaliation) and RLUIPA, Defendant Fitzgerald violated his First Amendment rights through retaliation, and Defendants Garrett and Madole violated his Fourteenth Amendment right to due process.  (Doc. 1, p. 6-9).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:**      **First Amendment (religious exercise) or RLUIPA claim based on Piercefield's and Kohn's handling of Plaintiff's religious practice while on the job;**

**Claim 2:**      **First Amendment retaliation claim against Piercefield, Kohn, or Fitzgerald for their alleged retaliation after Plaintiff's religious exercise at work or subsequent complaints or grievances about the same;**

**Claim 3:**      **Fourteenth Amendment Due Process claim against Defendants Madole and Garrett for their handling of Plaintiff's grievances.**

---

[2]      This allegation does not make sense in the grand scheme of things, because Plaintiff alleges that he had the initial encounter with Piercefield at work on August 31, 2021, and Fitzgerald retaliated on September 20, 2021. If Piercefield and Fitzgerald did not act until late August or mid-September, it would have been impossible for Plaintiff to file an August 9, 2021, grievance about their actions.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly. See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

PRELIMINARY DISMISSAL

In addition to the three claims identified above, Plaintiff mentioned that he received at least three disciplinary tickets (two from Piercefield and one from Fitzgerald), only one of which was expunged. Despite the ticket being expunged, he alleges that Defendant Kohn used it as a basis to fire him from his prison job. These allegations are insufficient to allege a Due Process claim for two reasons. First, the Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. XIV, § 1. Due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff does not describe the punishment he received for the three disciplinary tickets, so he has not established he had a liberty interest that was impacted by the discipline and that triggered due process protections.

Second, the loss of a prison job is not protected by the Due Process clause, so Plaintiff cannot successfully allege a claim related to the loss of his work assignment regardless of the disciplinary component to his termination. *See, e.g., Cochran v. Buss*, 381

F.3d 637, 641 (7th Cir. 2004) (noting that due process concerns were not triggered where inmate alleged that "he lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs . . . ."). Accordingly, the Court will not further discuss Plaintiff's allegations about the disciplinary tickets or his loss of prison employment.

DISCUSSION

Plaintiff alleges that Defendants Piercefield and Kohn violated his rights under the First Amendment and RLUIPA by their handling of his religion while on the job. An inmate's right to practice his religion is protected under the First Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts [] pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-380 (7th Cir. 2016) (citation and internal quotation marks omitted). RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005). However, RLUIPA does not permit the recovery of money damages against state officials; it only allows for injunctive relief. *See Sossamon v. Texas*, 563 U.S. 277, 287-288 (2011).

Here, Plaintiff indicates he would like to proceed under RLUIPA and the First Amendment, but he has not sought injunctive relief, so he cannot proceed under RLUIPA. As to the First Amendment, he may pursue a First Amendment claim against a defendant if he alleges that the defendant has done something to put a substantial burden on his ability to adhere to his religion. Plaintiff alleges that on one occasion Defendant Piercefield approached him mid-prayer and directed him to stop praying. Despite Piercefield's actions, however, Plaintiff finished his prayer. While Piercefield's actions may have been disruptive, it does not appear that on the occasion alleged that he prevented Plaintiff from praying. As such, this encounter cannot form the basis for a First Amendment free exercise claim.

In the wake of this interaction, Plaintiff alleges that Piercefield twice gave him tickets for not showing up to work. Reading the complaint broadly, it seems that Plaintiff attributes these tickets to Piercefield due to the prior encounter over his prayer while at work. But, by his own allegations Piercefield issued these tickets because Plaintiff was scheduled to work, and Plaintiff did not show-up for work. Plaintiff also alleges that on one of these days he had chest pain, which Piercefield already knew about, but Piercefield refused to accommodate him. When Plaintiff raised concerns about his schedule changes to Kohn, Kohn refused to help him. Plaintiff further alleges that Kohn would not help him with Piercefield's retaliation or harassment.

The problem with these allegations is that based on Plaintiff's own allegations, Piercefield was simply enforcing the procedure for an employee to report to work and/or to request a sick day. It is not apparent that the actions taken by Piercefield and/or Kohn

further burdened the free exercise of Plaintiff's religion. The only potential religious disruption that Plaintiff experienced was the one incident on August 31st when Piercefield tried to interrupt Plaintiff's prayer. After that incident, Plaintiff does not allege further hinderances to the exercise of his religion. As such, Plaintiff cannot proceed on the First Amendment concerning the free exercise of his religion.

By contrast, to the extent that Plaintiff claims the defendants were trying to retaliate against him for practicing his religion at work, he may proceed on this theory. To state a First Amendment retaliation claim, Plaintiff must plead that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Plaintiff alleges that after Piercefield confronted him at work about his religious observance on the job and after Plaintiff grieved about the incident, he began to encounter problems with Piercefield and others. Specifically, he alleges that Piercefield issued a disciplinary ticket relating to his job attendance despite there being confusion or a lack of communication regarding his schedule. Piercefield also issued a second disciplinary ticket related to his job attendance that was later overturned as unfounded. The first ticket came about two weeks after the prayer incident at work, and the second occurred a month after the first. Although suspicious timing alone is insufficient to sustain a retaliation claim, the Court will read the Complaint broadly at this preliminary juncture, giving

Plaintiff the inference that the timing suggests Piercefield issued the tickets with a retaliatory motive.

Next, Plaintiff alleges that Defendant Kohn changed his work schedule without notifying him. Plaintiff also alleges that Kohn refused to assist him when he reported Piercefield's retaliatory behavior. Again, suspicious timing alone will not be enough to support this claim later in the litigation, but for now, the claim is sufficient and will be allowed to proceed.

Finally, Plaintiff alleges that Defendant Fitzgerald participated in the retaliation. Plaintiff alleges that after he wrote a grievance about his interaction with Piercefield in late August 2021, Defendant Fitzgerald issued him a disciplinary ticket in retaliation for the grievance. Plaintiff alleges that when he asked Fitzgerald about the ticket, she said it was linked to writing grievances. This series of events forms the basis for a valid retaliation claim against Defendant Fitzgerald. Accordingly, Claim 2 concerning retaliation may proceed against Defendants Piercefield, Kohn, and Fitzgerald.

In Claim 3 Plaintiff alleges that Defendants Garrett and Madole violated his right to due process through their handling of two of his grievances. As to the first grievance, filed on July 31, 2021, he alleges that Garrett answered the grievance and he appealed it, but then Madole denied it as arriving at the ARB more than 30 days after the prison's final response. This series of events does not form the basis for a due process violation because the alleged mishandling of a grievance by those who processed the grievance is not sufficient to state a due process claim. *See, e.g., Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011) (noting that prison grievance procedures are not mandated by the constitution,

so the alleged mishandling of grievances by those who did not participate in the underlying constitutional harm does not give rise to a due process claim).

The same reasoning applies to the second grievance, filed on August 9, 2021. Plaintiff alleges that a grievance counselor erroneously labeled this grievance as a duplicate, and Garrett and Madole subsequently violated his rights by merely adopting that characterization of the grievance. Again, the mere mishandling of a grievance does not give rise to a due process claim. Accordingly, Claim 3 against Defendants Madole and Garrett is dismissed for failure to state a claim.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 2** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Zion Piercefield, Mr. Kohn, and Mrs. Fitzgerald. By contrast, **Claims 1 and 3** are dismissed for failure to state a claim, and there are no claims remaining against Defendants Margot Madole or Mr. Garrett. As such, the Clerk of Court is **DIRECTED** to **TERMINATE** these defendants.

The Clerk of Court is **DIRECTED** to prepare for Defendants Zion Piercefield, Mr. Kohn, and Mrs. Fitzgerald: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 11, 2023.**

Digitally signed by
Judge Sison
Date: 2023.12.11
13:31:24 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.